**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-13-0000022**
**26-NOV-2013**
**09:55 AM**

NO. CAAP-13-0000022

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


EDEN L. PANADO, Appellant-Appellant, v.
BOARD OF TRUSTEES EMPLOYEES' RETIREMENT SYSTEM
STATE OF HAWAI'I, Appellee-Appellee


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 12-1-0151)


SUMMARY DISPOSITION ORDER
(By: Foley and Fujise, JJ., with
Nakamura, C.J., dissenting)

Appellant-Appellant Eden L. Panado (Panado) appeals from the November 9, 2012 "Decision And Order Affirming The Final Decision Of The Board Of Trustees Of The Employees' Retirement System Of The State Of Hawai'i" and the December 13, 2012 Final Judgment filed in the Circuit Court of the First Circuit[1] (circuit court) in favor of Appellee-Appellee Board of Trustees Employees' Retirement System of the State of Hawai'i (ERS Board).

On appeal, Panado contends the circuit court erred by concluding that an October 9, 2004 incident resulting in Panado's permanent incapacitation for employment did not occur "at a definite time and place" so as to qualify her for service-connected disability retirement benefits (ERS benefits) under

---

[1] The Honorable Rhonda A. Nishimura presided.

Hawaii Revised Statutes (HRS) § 88-79 (2012 Repl.) and Hawaii Administrative Rules (HAR) § 6-22-8 (effective 2009-2013).[2]

Panado carries the burden of proving she is eligible for ERS benefits under HRS § 88-79 and HAR § 6-22-8. HAR § 6-23-31 (effective 2009-2013) ("the party initiating the proceeding shall have the burden of proof, including the burden of producing evidence and the burden of persuasion.") "The degree or quantum of proof shall be a preponderance of the evidence." Id. ERS benefits are available, upon application, to an ERS member "who has been permanently incapacitated for duty as the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place, or as the cumulative result of some occupational hazard, through no wilful negligence on the member's part[.]" HRS § 88-79(a). To determine whether or not an ERS member's application meets these criteria, the ERS Board "may accept as conclusive . . . [a] finding to this effect by the medical board."[3] HRS § 88-79(d)(2).

As defined under HRS Chapter 88, which governs pension and retirement systems, "[a]n accident is an unlooked for mishap or untoward event which is not expected or designed. Further, the retirement statute makes it clear that the member must have been permanently incapacitated 'as the natural and proximate

---

[2] Both the circuit court and Panado cite to HAR § 6-22-4 (effective 1984-2009) (concerning the medical board's "Engagement of other specialists"), but this is likely a clerical error. The regulation applying the "definite time and place" criterion is HAR § 6-22-8 ("Medical board's certifications and findings"). Previous to their amendment in 2009, HAR § 6-22-4 and HAR § 6-22-8 had the same titles and substantively similar content. HAR §§ 6-22-4; 6-22-8.

[3] HRS § 88-79(d)(2) provides, in relevant part:

§88-79 Service-connected disability retirement. . . . . .

(d) The [ERS] board may determine whether or not the disability is the result of an accident occurring while in the actual performance of duty at some definite time and place and that the disability was not the result of wilful negligence on the part of the member. The board may accept as conclusive:

(1) The certification made by the head of the agency in which the member is employed; or

(2) A finding to this effect by the medical board.

result of an accident occurring while in the actual performance of duty *at some definite time and place.*'" Lopez v. Bd. of Trustees, Employees' Ret. Sys., State of Hawaiʻi, 66 Haw. 127, 130-31, 657 P.2d 1040, 1043 (1983) (citation omitted).

Panado contends the circuit court erred by finding the October 9, 2004 incident did not constitute an "accident" under HRS § 88-79 because it did not occur at a "definite time and place[.]" Panado specifies the circuit court's statement:

> during the course of [Panado's] shift, her job required her to either lift, push, pull, that type of activity with respect to these boxes. So during a period of time.
>
> *Now, whether or not this type of activity over a course of an eight-hour shift constitutes an accident at some definite time and place, the [circuit c]ourt will say that given its plain ordinary meaning, the answer is no.*

Panado argues two points in support of her contention: (1) the October 9, 2004 incident presents facts "virtually identical" to those in a case in which the employee was awarded ERS benefits (Myers v. Bd. of Trustees of Employees' Ret. Sys., 68 Haw. 94, 704 P.2d 902 (1985)); and (2) the circuit court erred by too narrowly construing the meaning of "a definite time and place" under HRS § 88-79 and HAR § 6-22-8. Myers, 68 Haw. 94, 704 P.2d 902 (affirming the circuit court's reversal of ERS Board's decision to deny ERS benefits to a member).

We conclude that this case presents a different situation than that examined in Myers and the circuit court's construal of "a definite time and place" was not clearly erroneous. HRS § 88-79. Accordingly, we decline to disturb the circuit court's ruling.

In Myers, the facts were undisputed whereas two disputes surround the facts of Panado's injury – whether the injury: (1) arose over the course of moving and lifting boxes during an eight hour shift or at the particular moment when Panado dropped a box, and (2) is a permanent or temporary aggravation of back and neck injuries sustained previous to the alleged "accident." The undisputed facts in Myers were as follows:

> [Appellee], a state employee, was preparing to conduct a training class. He lifted a half-full one-hundred cup coffee maker weighing approximately thirty-five pounds, and after carrying it a distance, turned and attempted to set it on a table. <u>At that point, he heard a snap in his back</u>. He experienced sharp pains across his left lower back into the hollow of his buttocks, and shortly began experiencing a pulsating pain radiating down his right leg. Lifting the coffee pot was part of his normal and routine preparation for conducting the management class.

<u>Myers</u>, 68 Haw. at 95, 704 P.2d at 903 (emphasis added).

Unlike the injured employee in <u>Myers</u>, Panado's descriptions of when and where the pain from the alleged accident occurred are inconsistent and disputed.

On January 19, 2010, Panado testified she "really didn't remember exactly what it was, that exact action that happened that got me hurt in the first place" until she had a conversation with a coworker "just a few months ago[.]" The conversation caused Panado to remember the specific event on October 9, 2004 that caused her injury occurred when she dropped a box.

On occasions closer in time to the October 9, 2004 incident and prior to the January 19, 2010 hearing, Panado consistently stated that she developed neck and lower back pain after the repetitive lifting of boxes of paper and loading printers over the course of her eight hour shift, which would not constitute an "accident" as defined in HRS § 88-79 or HAR § 6-22-2 (effective 2009-2013).

Hearings Officer Junell Lee (Lee) noted the following consistent reports from Panado prior to the January 19, 2010 hearing. Panado's October 12, 2004 Report of Industrial Injury states she was repetitively lifting and moving heavy boxes. On October 13, 2004, four days after the alleged accident, Inam Rahman, M.D. examined Panado and reported her chief complaint as "hurt from her working place from pushing and lifting boxes." Medical records of Bernard M. Portner, M.D.'s examination of Panado on November 8, 2004 contain Panado's description of events leading to her injury: "From Friday night 11:30 pm (10/8/04) until Saturday morning 0745 AM (10/9/04) I was printing special forms on 2 impact printers and reports on Xerox printer. I was

repetitively lifting & moving heavy boxes to & from the printers." Panado's May 1, 2006 application for ERS benefits states she was printing forms and felt pain while lifting forms to load and unload between printers. Lee found the new version Panado presented of the alleged accident to lack credibility.

Injuries resulting in "permanent" aggravation of pre-existing conditions may qualify under HRS § 88-79(a). Id. (providing for members who are "permanently incapacitated" as a result of injuries arising from accidents). The medical board is prohibited from considering in its recommendation and reports "a permanent incapacity that is caused by or results from the natural deterioration, degeneration, or progression of a non-service connected pre-existing condition" and the ERS Board is prohibited from granting disability retirement benefits for such a condition. HAR § 6-22-7 (effective 2009-2013).

Another fact disputed by the parties concerns whether Panado's disabled condition after the October 9, 2004 incident is a permanent or temporary aggravation of Panado's ongoing health problems consequent to a 1994 motor vehicle accident that injured her back and fibromyalgia. Medical examiners presented conflicting opinions. Donald K. Maruyama, M.D. (Dr. Maruyama) opined that Panado "may" suffer "mild permanent aggravation" resulting from October 9, 2004 incident. Rowlin L. Lichter, M.D. (Dr. Lichter) disagreed with this opinion because it was based on Panado's "self-serving reports" and the finding is "essentially contrary to the objective evidence."

Lee "agree[d] with Dr. Lichter's objection to Dr. Maruyama's caveat" and concluded, Panado "sustained a temporary aggravation of her low back condition on October 9, 2004, but was back at pre-injury state by the October 24, 2005 date of Dr. Maruyama's [independent medical evaluation]." The disputed relationship between Panado's ongoing health condition and injuries consequent to the October 9, 2004 incident raises questions about the "definite time and place" at which the alleged accident occurred, a fact that was not at issue in Myers.

Panado contends this court should apply a de novo standard of review to the undisputed fact that the alleged

accident occurred at her workplace during her eight-hour work shift. The issue under review, however, is more accurately characterized as a mixed question of law and fact: whether the circuit court erred by narrowly construing the phrase "a definite time in place" as used in HRS § 88-79(a) and HAR § 6-22-2 to exclude the "repetitive lifting and moving of heavy boxes during the course of [Panado's eight hour] shift[.]"

We conclude the circuit court properly deferred to ERS Board's application of HRS § 88-79(a) and HAR § 6-22-8 to this mixed question of law and fact. Id.; see Camara v. Agsalud, 67 Haw. 212, 216, 685 P.2d 794, 797 (1984) ("in deference to the administrative agency's expertise and experience in its particular field, the courts should not substitute their own judgment for that of the administrative agency where mixed questions of fact and law are presented. This is particularly true where the law to be applied is not a statute but an administrative rule promulgated by the same agency interpreting it.") (citations omitted).

The medical board, Lee, and the ERS Board determined that an injury spanning an eight-hour work shift is not definite enough to constitute an "accident" under HRS § 88-79. The medical board certified that Panado's incapacity is not "the result of an accident occurring while [Panado was] in the actual performance of duty at some definite time and place[.]" Patricia Chinn, M.D., chair of the medical board, explained: "[a]n accident needs to occur at a specific date and time. It's not over a stretch of hours. It is not something that occurs and then developed symptoms the following day." Lee "conclude[d] that [Panado] did not establish [sic] burden of proof that her incapacity was the result of an accident occurring while in the actual performance of duty at some definite time and place . . . ." The ERS Board incorporated Lee's findings of fact and conclusion of law into its final decision. This court declines to substitute its judgment for that of the ERS Board and its agents in their interpretation and application of HRS § 88-79. See Camara, 67 Haw. at 216, 685 P.2d at 797.

Therefore,

IT IS HEREBY ORDERED that the November 9, 2012 "Decision And Order Affirming The Final Decision Of The Board Of Trustees Of The Employees' Retirement System Of The State Of Hawaiʻi" and the December 13, 2012 Final Judgment both filed in the Circuit Court of the First Circuit are affirmed.

DATED:   Honolulu, Hawaiʻi, November 26, 2013.

On the briefs:

Philip W. Miyoshi
(Miyoshi & Hironaka)
for Appellant-Appellant.

Patricia Ohara
Kyle K. Chang
Deputy Attorneys General
for Appellee-Appellee.

Associate Judge

Associate Judge